625 S.E.2d 274

PIPEMASTERS, INC., a West Virginia corporation, Plaintiff Below, Appellee,

v.

PUTNAM COUNTY COMMISSION, a West Virginia public corporation and political subdivision of the State of West Virginia; and The West Virginia–American Water Company, a West Virginia corporation,

and

Putnam County Building Commission, a West Virginia public corporation and political subdivision of the State of West Virginia, Counterclaim Plaintiff Below, Appellant,

v.

Pipemasters, Inc., a West Virginia corporation, Counterclaim Defendant Below, Appellee,

and

Putnam County Building Commission, a West Virginia corporation and political subdivision of the State of West Virginia, and West Virginia–American Water Company, a West Virginia corporation, Third–Party Plaintiffs Below,

v.

HNTB Corporation, a Delaware corporation, Third–Party Defendant Below, Appellee,

Putnam County Building Commission and West Virginia–American Water Company, Appellants.

No. 32667.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 11, 2005.

Filed: Dec. 2, 2005.

514

Carl J. Roncaglione, Jr., Esq., Charleston, for Appellee.

John Philip Melick, Esq., Jackson Kelly, PLLC, Jay M. Potter, Esq., Schumacher, Francis & Nelson, Charleston, for Putnam County Building Commission and West Virginia–American Water Company.

Harold F. Salsbery, Esq., Leah Perry Macia, Esq., Bailey & Glasser, Charleston, for Mid–State Surety Corporation.

Mark W. Browning, Esq., Shuman, McCuskey & Slicer, Charleston, for HNTB Corporation.

The Opinion was delivered PER CURIAM.

PER CURIAM.

This case arises from a dispute over the installation of a waterline in rural Putnam County. After a three and one-half week jury trial, a verdict was rendered in favor of Pipemasters, Inc., plaintiff below/appellee. The West Virginia–American Water Company and the Putnam County Building Commission appeal the decision of the trial court in denying post trial motions. For the reasons stated herein we affirm.

I.

In the late 1990s the Putnam County Building Commission ("Commission") began working on a project to extend water service in rural Putnam County. In total there were seven Putnam County waterline projects; the waterline extension in dispute in this case was one of those projects.

The Commission selected West Virginia–American Water Company ("Water Company") to serve as project engineer. The Water Company hired HNTB Corporation ("HNTB") to design the lines and to work as project inspector. The Commission hired Pipemasters, Inc. ("Pipemasters") to install the lines in accordance with a written contract. Mid–State Surety ("Mid–State") issued a performance bond to secure Pipemasters' installation of the lines.

The Commission and the Water Company entered into an operation and maintenance agreement wherein the Water Company would be responsible for the operation, maintenance, repair and replacement of the waterlines, and the Water Company would be paid for the water supplied to customers.

A critical part of the contract in dispute involves the construction of the waterline longitudinally along a Department of Highways ("DOH") right-of-way. The Commission, as owner of the project, applied to the DOH for a permit to enter upon, under, over or across relevant state roads and rights-of-way. The DOH permit included the condition that "[u]tility installation shall be in accordance with the current manual, 'Accommodation of Utilities on Highway Rights–of–Way.'" The contract required Pipemasters

to install the waterline according to the DOH manual, and with a minimum of forty-two inches of cover unless otherwise authorized.

Pipemasters worked from February to May 2000 installing the waterline. Inspections were regularly made by HNTB and the DOH. The right-of-way restoration was apparently completed to the satisfaction of the DOH as of May 2000. None of the parties objected to the quality of work performed by Pipemasters as of May 2000. Additionally, during this period Pipemasters submitted seven periodic pay estimates which, before payment could be made, had to be approved by both the Water Company and HNTB. All seven periodic pay estimates contained certifications by the Water Company and HNTB that the work had been performed in accordance with the contract. All pay estimates were paid. Pipemasters was paid for all of the contract bid price, except for $33,659.78 retainage.

In May 2000, after the installation had been completed and service to some customers had commenced, Pipemasters was required to perform some reditching on the DOH right-of-way. The reditching was required by a DOH supervisor who had not been previously involved with the project. In late 2000, the Water Company discovered that some sections of the waterlines had less than the required forty-two inches of cover. At the request of the Water Company, HNTB reviewed the matter and HNTB recommended that test holes be dug to determine to what extent any waterlines had less than forty-two inches of cover. The test holes confirmed that in a number of locations the waterline did have less than the specified forty-two inches.

The Water Company then requested Pipemasters to re-lay those sections of the waterline with less than the required cover. Pipemasters began re-laying the waterlines and submitted invoices for its work. On March 4,

2002, Pipemasters was paid $37,753.52,[1] and on March 5, 2002, appellants terminated the contract with Pipemasters—before the re-laying of the waterline was completed. The Commission then authorized the Water Company to undertake the completion of re-laying waterlines that had inadequate cover.

On September 11, 2002, Pipemasters filed a lawsuit against the Commission in the circuit court of Putnam County, alleging breach of contract and an implied contract for the additional work Pipemasters had performed. Pipemasters' complaint also included a claim against the Water Company for negligence. The Commission filed an answer to the complaint and countersued Pipemasters. The Commission also filed a third-party complaint against HNTB and Mid–State alleging breach of contract, negligence, and breach of duties under a performance bond. The Water Company filed a third-party complaint against HNTB for alleged breach of duties owed to the Water Company relating to inspections. HNTB filed its answers, and also filed a third-party counterclaim against the Water Company for failing and refusing to pay HNTB's invoices for work performed.[2] Mid–State responded to the litigation with claims against Pipemasters and Pipemasters' guarantors.[3] Before trial, the Commission assigned its claims to the Water Company and the Water Company agreed to hold the Commission harmless beyond remaining project funds.

A three and one-half week jury trial began on January 28, 2004. The jury found that Pipemasters satisfactorily completed its obligation under the contract, and that Pipemasters was entitled to be compensated for work performed beyond its obligation under the original contract. The jury awarded Pipemasters $390,446.29.[4] The jury also rejected the Commission's and the Water Company's counterclaims against Pipemasters as well as

---

1. The record suggests that this payment was for the installation of customer service taps, and not for the re-laying of the waterline to the proper depth.

2. HNTB's claim for unpaid invoices was settled before trial and is not at issue in this appeal.

3. The claim against the guarantors was bifurcated and is not at issue in this appeal.

4. Based on the record of this appeal, this verdict appears to represent $19,500.00 for test hole work, $265,286.51 for re-laying waterlines, and $33,659.78 retainage.

their third party claims.[5]

5. The trial court provided the jury a comprehensive verdict form to assist the jury in making its findings. The completed verdict form was as follows:

**PART ONE**

**Pipemasters' Claims Against the Putnam County Building Commission and West Virginia American Water Company**

1. Do you find by a preponderance of the evidence that Pipemasters satisfactorily completed its obligations under the PC4 contract with the Putnam County Building Commission?

  Yes [x]   No

2. Do you find by a preponderance of the evidence that the West Virginia American Water Company acted negligently in the administration of the PC4 contract and in its supervision of the PC4 contract and that such negligence prevented Pipemasters from performing its duties under the contract?

  Yes   No [x]

3. Do you find by a preponderance of the evidence that Pipemasters was required to perform additional work beyond its obligations under the PC4 contract and for which it should receive reasonable compensation from the Putnam County Building Commission and the West Virginia American Water Company?

  Yes [x]   No

*If you answered "Yes" to question three, then you should proceed to Part Two. If you have answered "No" to question three, then proceed to part Three.*

**PART TWO**

**Pipemasters' Damages**

We, the jury, find that Pipemasters is entitle to recover from West Virginia American Water Company and the Putnam County Building Commission the total sum of

  $ 390,446.29

  *Proceed to Part Three.*

**PART THREE**

**Claims Against Pipemasters by West Virginia American Water Company including assigned claims of Putnam County Building Commission**

Do you find by a preponderance of the evidence that Pipemasters breached its duties under the PC4 contract and that such breach was a proximate cause of the damages sought by the West Virginia American Water Company?

  Yes   No [x]

*Proceed to Part Four.*

**PART FOUR**

**Claims Against HNTB Corporation by West Virginia American Water Company including claims assigned by the Putnam County Building Commission**

Do you find by a preponderance of the evidence that HNTB Corporation breached its

contract with the West Virginia American Water Company to provide inspection and certification services of Pipemasters' work on the contract and that such breach was a proximate cause of the damages sought by the West Virginia American Water Company?

  Yes   No [x]

*If you answered "Yes" to both or either of the previous questions in Part Three or Part Four, then you should proceed to Part Five. If you answered "No" to both of the previous questions in Part Three and Part Four, then you should sign and date the verdict form and tell the bailiff you have reached a verdict.*

**PART FIVE**

**West Virginia American Water Company's Damages**

Without regard as to whom is at fault,

We, the jury, find that West Virginia American Water Company is entitled to receive as its total amount of damages the sum of $ _____.

  *Proceed to Part Six.*

**PART SIX**

**Apportionment of Damages as to claims of West Virginia American Water Company against Pipemasters and HNTB Corporation**

If you answered "Yes" to the questions in both Part Three and Part Four, then state the specific amount of damages proximately caused by Pipemasters and the specific amount of damages proximately caused by HNTB in the blank opposite their names. The total amount of damages attributed to these defendants may not exceed the total amount of damages you awarded in Part Five.

  Pipemasters  $
  HNTB Corporation $
  Total Damages  $

*Proceed to Part Seven*

**PART SEVEN**

**Claims against Mid–State Surety Corporation by West Virginia American Water Company including claims assigned by the Putnam County Building Commission**

Do you find by a preponderance of the evidence that Mid–State Surety Corporation had the responsibility under its performance bond for the completion of Pipemasters' work and that it is obligated to indemnify West Virginia American Water Company for any damages against Pipemasters as a result of Pipemasters' breach of the PC4 contract with the Putnam County Building Commission?

  Yes   No [x]

*Proceed to Part Eight*

**PART EIGHT**

Do you find by clear and convincing evidence that Pipemasters fraudulently informed the Putnam County Building Commission that its work under the PC4 contract had been in

for judgment as a matter of law and for a new trial was filed by the Commission and the Water Company. The joint motion was denied by the trial court. It is from this order that the appellants appeal to this Court for relief.

## II.

The appellants assign as error: (1) the trial court erred in denying the joint motions for judgment as a matter of law and for a new trial as to the claims of Pipemasters; (2) the trial court erroneously instructed the jury on the law of suretyship; and (3) the trial court erred in denying the motion of the Water Company for a new trial as to the Water Company's counter-claims and third-party claims (including those claims assigned to it by Commission).

Appellants brought their motion for judgment as a matter of law and for a new trial under Rules 50(b) and 59(a) of the *West Virginia Rules of Civil Procedure.*

█ We are first asked to review the circuit court's order denying a post-verdict motion for judgment as a matter of law. In Syllabus Point 3 of *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996), this Court stated:

> The appellate standard of review for the granting of a motion for [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a [judgment as a matter of law] when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a [judgment as a matter of law] will be reversed.

█ In Syllabus Point 3 of *Alkire v. First National Bank of Parsons*, 197 W.Va. 122, 475 S.E.2d 122 (1996) we held:

complete compliance with the contract documents and received payment for that work?

The granting of a motion for judgment notwithstanding the verdict is reviewed *de novo*, which triggers the same stringent decisional standards that are used by the circuit courts. While a review of this motion is plenary, it is also circumscribed because we must review the evidence in a light most favorable to the nonmoving party.

Finally, in Syllabus Point 1 of *Alkire* we also held, in part, that:

> In reviewing a trial court's denial of a motion for judgment notwithstanding the verdict, it is not the task of the appellate court reviewing facts to determine how it would have ruled on the evidence presented. Its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, in ruling on a denial of a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the nonmoving party. If on review, the evidence is shown to be legally insufficient to sustain the verdict, it is the obligation of the appellate court to reverse the circuit court and to order judgment for the appellant.

█ In this proceeding we are also asked to review the circuit court's order with respect to the denial of appellants' motion for a new trial. In *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), this Court addressed the standard of review of a trial court's ruling on a motion for a new trial. In *Tennant* the Court stated:

> We review the rulings of the circuit court concerning a new trial and its conclusions as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review.

*Tennant*, 194 W.Va. at 104, 459 S.E.2d at 381. Further, in addressing a motion for a new trial, we said in Syllabus Point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593

Yes          No [x]

(1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984), that:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

We also said in Syllabus Point 3 of *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994), *cert. denied,* 515 U.S. 1160, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995) that:

> A motion for a new trial is governed by a different standard than a motion for a directed verdict. When a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the *West Virginia Rules of Civil Procedure,* the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

██ This Court has historically favored supporting jury verdicts and will affirm a verdict, short of compelling reasons to set a verdict aside. In Syllabus Point 2 of *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937) we held:

> An appellate court will not set aside the verdict of a jury, founded on conflicting testimony and approved by the trial court, unless the verdict is against the plain preponderance of the evidence.

And, we have stated, as recently as 2004 in *In re Tobacco Litigation,* 215 W.Va. 476, 480, 600 S.E.2d 188, 192 (2004) (*per curiam*), that "[t]ypically, when a case has been deter-mined by a jury, the questions of fact resolved by the jury will be accorded great deference."

With these principles in mind we review the assignments of error.

██ Appellants first contend that the trial court erred in denying the joint motions of the Commission and the Water Company for judgment as a matter of law and for a new trial as to the claims of Pipemasters. From a review of the record we find this assignment of error to be without merit. A substantial part of appellants' argument centers around various correspondence exchanged between the parties. Appellants argue, in part, that the correspondence constituted a new contract which, in essence, resulted in a compromise and settlement of alleged deficiencies in Pipemasters' performance under the original contract.

██ In support of their position, appellants cite *Toppings v. Rainbow Homes, Inc.,* 200 W.Va. 728, 490 S.E.2d 817 (1997) (*per curiam*) and *Kesari v. Simon,* 182 W.Va. 795, 392 S.E.2d 511 (1990). We believe appellants' reliance on *Toppings* and *Kesari* and the principles for which they are cited is misplaced. For instance, appellants correctly refer to *Toppings* for the proposition that "[i]t is the province of the court, and not a jury, to *interpret* a written contract." Syllabus Point 1, *Toppings, citing* Syllabus Point 1, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984), *citing* Syllabus Point 1, *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937). *Kesari* is cited for the proposition that the law favors contracts of compromise and settlement. Appellants, however, fail to acknowledge a corollary principle stated in *Toppings:*

> While the determination of what constitutes a contract under our relevant cases is a question of law, the determination of whether particular circumstances fit within the legal definition of a contract under our cases is a question of fact.

*Toppings,* 200 W.Va. at 732–33, 490 S.E.2d 817 and 490 S.E.2d at 821–22. We held in Syllabus Point 4 of *Cook v. Heck's Inc.,* 176

W.Va. 368, 342 S.E.2d 453(1986) that "[g]enerally, the existence of a contract is a question of fact for the jury."

In the instant case we believe that the trial court correctly instructed the jury on the law of contracts, and allowed the jury to resolve the issues as to whether there was a second contract. We conclude that no error was committed by the trial court as to this issue.

Also, with respect to appellants' first assignment of error, we cannot say that the evidence is legally insufficient to sustain the verdict; we find the contrary to be true. After reviewing the record with an *Orr v. Crowder* analysis, we find that the trial court properly denied appellants' motion for judgment as a matter of law and new trial.

We next turn to appellants' second assignment of error, namely, that the trial court erroneously instructed the jury on the law of suretyship. Because of our holding that the jury verdict in favor of Pipepasters should be affirmed, we find it unnecessary to address this issue.

Finally, we address the third assignment of error that the trial court erred in denying the motion of the Water Company for a new trial as to the claims of the Water Company (including those claims assigned to it by the Commission) against Pipemasters, HNTB, and Mid–State. We believe that there was sufficient evidence to find that the verdict in favor of Pipemasters was supported by the clear weight of the evidence, that Pipemasters properly performed its contract, and that Pipemasters is entitled to be paid for the additional work performed at the request of appellants; therefore, the counterclaims and third-party claims are without merit.

We conclude that the trial court did not abuse its discretion in denying appellants' post-trial motions.

### III.

Based upon the foregoing we affirm the judgment of the trial court.

Affirmed.