680 S.E.2d 16

Arden E. FREDEKING, Plaintiff Below, Appellee,

v.

Marlise TYLER and Bradford Tyler as parents and next friends of Arianna Tyler, an infant under the age of eighteen and Marlise Tyler and Bradford Tyler, individually, Defendants Below, Appellants,

and

GEICO Indemnity Company, Defendant Below, Appellee.

No. 34150.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 28, 2009.

Decided Feb. 26, 2009.

2

William L. Mundy, Esq., James A. Spenia, Esq., Mundy & Nelson, Huntington, WV, for Appellee Arden Fredeking.

Brian D. Morrison, Esq., Bailey & Wyant, P.L.L.C., Charleston, WV, for the Appellants.

KETCHUM, Justice:[1]

In this appeal from the Circuit Court of Cabell County, we are asked to review a circuit court order setting aside a jury's verdict, entering judgment as a matter of law, and granting a new trial on damages to determine the value of a vehicle totaled in a collision.

After careful consideration of the trial transcript and evidence, the briefs and arguments of the parties, and all other matters of record, we reverse the circuit court's order and reinstate the jury's verdict holding that the plaintiff below did not establish that she owned the vehicle totaled in the collision.

## I.

### Facts and Background

On July 22, 2003, a vehicle collision occurred at an intersection in Huntington, West Virginia. The appellant and defendant below, Arianna Tyler, was driving a car owned by her parents[2] when she drove into an intersection and collided with a vehicle being driven by the appellee and plaintiff below, Arden E. Fredeking. The vehicle being driven by Ms. Fredeking—a 1985 BMW 535i—was totaled in the collision.

In the original complaint filed on September 12, 2003, Ms. Fredeking and the "Fredeking & Fredeking Law Offices, L.C."—both represented by an attorney employed by the Fredeking & Fredeking law firm—

---

1. Pursuant to administrative orders entered September 11, 2008 and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Ms. Tyler's parents, Marlise Tyler and Bradford Tyler, are also appellants and defendants. They were sued as owners of the car driven by Ms. Tyler under the family purpose doctrine.

sued for Ms. Fredeking's personal injuries[3] and for the damages to the 1985 BMW 535i, which the complaint stated was owned by the Fredeking & Fredeking law firm.[4] The defendants filed an answer to the complaint that asserted a counterclaim against Ms. Fredeking seeking contribution for any negligence on her part that contributed to any damage to the BMW 535i owned by the Fredeking & Fredeking law firm. On November 5, 2003, the law firm voluntarily dismissed its claims, and Ms. Fredeking sought to amend her complaint to assert that she was the "proper owner" of the vehicle.[5] By order dated December 11, 2003, the circuit court granted Ms. Fredeking's motion to amend her complaint.[6]

The issue presented to the jury was whether the plaintiff, Ms. Fredeking, was the owner of the 1985 BMW 535i, and therefore entitled to damages for the value of the totaled vehicle. The defendants contended at trial that Ms. Fredeking was not the owner of the BMW 535i.

At trial, only the plaintiff, Ms. Fredeking, presented witness testimony to the jury. The defendants submitted no witnesses, and relied upon evidence solicited during cross-examination of the plaintiff's witnesses.

The facts adduced at trial are these: in 1985, a business owned by Ms. Fredeking's father, "Fredeking & Fredeking, Legal Corp.," purchased the BMW 535i. The vehicle's title was issued in Florida, and the vehicle was registered and licensed in Florida.

Ms. Fredeking contends that, thirteen years later, in 1998, her father "gave" the vehicle to Ms. Fredeking for her 16th birthday. From 1998 until the time of the collision in 2003, Ms. Fredeking testified that she resided in Huntington, West Virginia where she garaged, drove and serviced the vehicle. At trial, both Ms. Fredeking and her father, R.R. Fredeking, II., testified that Ms. Fredeking was the owner of the vehicle.

However, during that time period the vehicle continued to be registered and licensed in Florida in the name of "Fredeking & Fredeking, Legal Corp." The vehicle's registration was never renewed in Ms. Fredeking's name; instead, each year, the law firm paid for and renewed the registration in its name in the State of Florida.

The vehicle also continued to be titled in the law firm's name in Florida. At trial, Ms. Fredeking's father testified that he—as owner of the law firm[7]—signed the back of the

3. The parties resolved and settled all of Ms. Fredeking's claims regarding those injuries prior to trial.

4. The complaint stated, in pertinent part:

    4. On or about the 22nd day of July, 2003, the Plaintiff, Arden E. Fredeking, was the operator of a 1985 BMW, which was owned by Plaintiff, Fredeking & Fredeking Law Offices, LC....

    Ms. Fredeking's complaint also asserted a claim against Ms. Tyler's insurance company, GEICO Indemnity Company, alleging that the insurance company had engaged in unfair claim settlement practices. See W.Va.Code, 33-11-4 [1985].

5. Ms. Fredeking's motion to amend states, in part:

    Arden E. Fredeking was the proper owner of the 1985 BMW at the time of the accident. Fredeking & Fredeking, L.C. was the record owner at the time of the accident. The title to the vehicle had previously been transferred to Arden E. Fredeking and/or R.R. Fredeking, II [the plaintiff's father] but has not been sent to the Department of Motor Vehicles to have a new title issued.

    The defendants note that the same lawyer who filed Ms. Fredeking's complaint and amended

complaint in 2003 signed as the notary to Mr. Fredeking's signature on the back of the vehicle's title dated in 1998. Mr. Fredeking testified at trial that he had transferred ownership of the vehicle from his law firm to his daughter in 1998 on the date his signature was notarized. The notary, who worked in Mr. Fredeking's law office, did not testify at trial.

6. We note that in November 2003, the defendant-appellants filed a motion for partial summary judgment on the ground that there were "no facts in dispute that Ms. Fredeking did not own the subject 1985 BMW." Hence, it appears that the issue of the vehicle's ownership was litigated almost since the inception of Ms. Fredeking's lawsuit. In its December 11, 2003 order, the circuit court denied the motion for partial summary judgment.

7. The defendants point out that, according to the West Virginia Secretary of State, "Fredeking & Fredeking, Legal Corp." dissolved and ceased to exist in 1992. By dissolving, the defendants argue that the law firm essentially represented to the State of West Virginia that the net assets of the corporation remaining after winding up had been distributed. See W.Va.Code, 31D-14-1401, et seq.

vehicle's Florida title in 1998 to signify he transferred the vehicle to Ms. Fredeking. However, the title to the vehicle was never transferred from the law firm's name into Ms. Fredeking's name prior to the accident.

Copies of the police accident report and the post-accident vehicle storage bills were introduced into evidence without objection. Each of these documents stated that the vehicle was owned by the law firm, not by Ms. Fredeking.

At the conclusion of the trial, the jury returned a verdict in favor of the defendants. Specifically, the jury found that the 1985 BMW 535i was not owned by the plaintiff, Ms. Fredeking.[8]

Ms. Fredeking subsequently filed a renewed motion for a judgment as a matter of law or in the alternative for a new trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998]. In an order dated November 1, 2007, the circuit court granted Ms. Fredeking's motion, concluding that

> [A]ll the testimony at trial showed that the vehicle was properly signed over to and owned by Arden Fredeking. The only evidence at trial concerning ownership of the vehicle was that the plaintiff's father signed the title over to the [plaintiff], gave her possession of the title, and gave her possession of the vehicle prior to the motor vehicle accident in question.

The circuit court went on to find that

> The only evidence presented at trial indicated that the plaintiff intended the vehicle to be her own and used it as such from the time of the transfer of ownership until the time of the motor vehicle accident.

The circuit court therefore granted Ms. Fredeking's renewed motion for judgment as a matter of law after trial and held that she was the owner of the BMW 535i, stating that "all of the evidence presented at trial demonstrated that Arden Fredeking was the right-

---

The defendants therefore suggest that, technically, it was impossible for the dissolved and thus non-existent law firm to transfer ownership to Ms. Fredeking in 1998.

**8.** The jury's verdict form stated, in part:

ful owner of the motor vehicle." Based on this ruling, the circuit court awarded the plaintiff a new trial "on damages only" to determine the value of the vehicle totaled in the collision.

The defendants now appeal the circuit court's November 1, 2007 order granting the plaintiff judgment as a matter of law on the issue of ownership of the 1985 BMW 535i and a new trial on the single issue of damages.

## II.

### Standard of Review

The circuit court granted the plaintiff judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* [1998]. Prior to the amendment of Rule 50 in April 1998, a post-trial motion for judgment as a matter of law was called a "motion for judgment notwithstanding the verdict" or "motion for judgment *non obstante veredicto*,"[9] and we note that these vestigial terms continue to occasionally litter both this Court's opinions and the arguments of attorneys. *See, e.g.,* Syllabus Point 2, *Pipemasters, Inc. v. Putnam County Com'n,* 218 W.Va. 512, 625 S.E.2d 274 (2005); Syllabus Point 1, *Bowyer v. Hi-Lad, Inc.,* 216 W.Va. 634, 609 S.E.2d 895 (2004); Syllabus Point 2, *Kizer v. Harper,* 211 W.Va. 47, 561 S.E.2d 368 (2001).

Our standard of review of a judgment notwithstanding the verdict was *de novo.* In Syllabus Point 3 of *Alkire v. First Nat. Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996), we said:

> The granting of a motion for judgment notwithstanding the verdict is reviewed *de novo,* which triggers the same stringent decisional standards that are used by the circuit courts. While a review of this motion is plenary, it is also circumscribed because we must review the evidence in a light most favorable to the nonmoving party.

---

We the jury agree and find that the car, a 1985 BMW 535(i) was owned by Arden Fredeking[.]

Yes _____          No __✓__

**9.** Motions for a judgment as a matter of law before a verdict were, prior to 1998, called motions for a directed verdict.

While the terminology changed when Rule 50 was amended in 1998, it is clear that the standards of review for rulings regarding motions made under the rule were unaffected. *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 482 n. 7, 457 S.E.2d 152, 159 n. 7 (1995). *See, e.g., Gillingham v. Stephenson,* 209 W.Va. 741, 745, 551 S.E.2d 663, 667 (2001) (This Court applies "a *de novo* standard of review to the grant or denial of a pre-verdict or post-verdict motion for judgment as a matter of law."); Syllabus Point 5, *Smith v. First Community Bancshares, Inc.,* 212 W.Va. 809, 575 S.E.2d 419 (2002) ("The appellate standard of review for the granting of a motion for a [judgment as a matter of law] pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo.")

■ Still, to clarify our law to reflect the change of terminology in the 1998 amendment to the *Rules of Civil Procedure,* we now hold that the appellate standard of review for an order granting or denying a renewed motion for a judgment as a matter of law after trial pursuant to Rule 50(b) of the *West Virginia Rules of Civil Procedure* is *de novo.*

■ When this Court reviews a trial court's order granting or denying a renewed motion for judgment as a matter of law after trial under Rule 50(b), it is not the task of this Court to review the facts to determine how it would have ruled on the evidence presented. Instead, its task is to determine whether the evidence was such that a reasonable trier of fact might have reached the decision below. Thus, when considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party. *See,* Syllabus Point 2, *Al-*

*kire v. First Nat. Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996).

With these standards in mind, we examine the arguments of the parties.

### III.

#### *Discussion*

■ The defendants argue that the circuit court erred in overturning the jury's verdict and entering judgment concerning the vehicle's ownership to the plaintiff, Ms. Fredeking. The plaintiff, Ms. Fredeking, counters that the circuit court's decision was correct, because all of the testifying witnesses were in agreement that she owned the vehicle at the time of the 2003 collision.

The defendants properly note that Ms. Fredeking bore the burden of proving she was the owner of the vehicle. The defendants contend that while the witnesses testified that Ms. Fredeking owned the BMW 535i, the jury properly drew different inferences from the testimony and documents admitted into evidence, and was properly instructed by the circuit court to assess the credibility of the witnesses.[10] The defendants argue that the jury could reasonably conclude from a review of all of the evidence that the plaintiff's witnesses regarding ownership of the vehicle were not credible. In other words, the defendants argue that the jury gave the testimony of the plaintiff's witnesses no "credit and weight" as was their right under the circuit court's instructions.

In sum, the defendants take the position that the jury properly found that the plaintiff did not meet her burden of proof, that the jury's conclusion that the plaintiff did not own the vehicle was supported by the evidence, and that it was error for the circuit

---

10. Neither party objected to the circuit court's instructions, which stated in pertinent part:

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You, as jurors, are the sole judges of the "credibility of the witnesses" and the "weight of the evidence." The "credibility of the witness" means the truthfulness or lack of truthfulness of the witness. The "weight of the evidence" means the extent to which you are, or are not,

convinced by the evidence. You should carefully scrutinize the testimony given, the circumstances under which the witness has testified and every matter in evidence which tends to indicate whether the witness is worthy of belief....

From these considerations, and all other conditions and circumstances appearing from the evidence, you may give to the testimony of the witness such credit and weight as you believe it is entitled to receive....

**6**

court to have usurped the jury's findings. We agree.

Although a trial court does have some role in determining whether there is sufficient evidence to support a jury's verdict, it is not the role of the trial court to substitute its credibility judgments for those of the jury. The circuit court's role in determining whether sufficient evidence exists to support a jury's verdict was set forth in Syllabus Point 5 of *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), where we held:

> In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Stated another way, we held in Syllabus Point 3 of *Walker v. Monongahela Power Co.,* 147 W.Va. 825, 131 S.E.2d 736 (1963) that:

> In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

*In accord,* Syllabus Point 6, *Toler v. Hager,* 205 W.Va. 468, 519 S.E.2d 166 (1999); Syllabus Point 12, *Neely v. Belk Inc.,* 222 W.Va. 560, 668 S.E.2d 189 (2008).

After carefully examining the trial record and the evidence admitted before the jury, we find that the evidence at trial reasonably supports the jury's verdict in favor of the defendants. This is particularly so when every reasonable and legitimate inference in favor of the defendants' position and fairly arising from the evidence is assumed as true. *See Orr v. Crowder, supra,* and *Walker v. Monongahela Power Co., supra.*

We therefore find that it was error for the circuit court to have set aside the jury's verdict that Ms. Fredeking did not own the BMW 535i, and to have entered a judgment as a matter of law that Ms. Fredeking was the owner of the vehicle. We also find that it was error for the circuit court to have granted the plaintiff a new trial on the single issue of damages, based on that judgment as a matter of law.

### IV.

*Conclusion*

The circuit court's November 1, 2007 order is reversed, and the jury's verdict is reinstated.

Reversed

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.