# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**F&R CARGO EXPRESS, LLC,**
**Defendant Below, Petitioner**

**v.)  Nos. 24-ICA-242, 24-ICA-243, 24-ICA-244**
(Cir. Ct. of Ohio Cnty. Case Nos. CC-35-2022-C-10,
CC-35-2022-C-44, and CC-35-2022-C-45)

**FILED**

**May 14, 2025**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**AIDA BETTS, AS ADMINISTRATRIX OF THE ESTATE OF ADANELA L. SANTANA, EBONY WHITE, AND EBONY WHITE, AS MOTHER AND NEXT FRIEND OF J.B.,**
**Plaintiffs Below, Respondents**

## MEMORANDUM DECISION

Petitioner F&R Cargo Express, LLC ("F&R Cargo") appeals the circuit court's denial of its renewed motion for judgment as a matter of law or new trial following a jury trial that resulted in a judgment against it for $7,029,256. The underlying cases, which were consolidated for trial, involved a motor vehicle accident that killed Adanela L. Santana and seriously injured the passengers in her vehicle, Ebony White and her minor daughter, J.B.[1] Respondents Aida Betts, as Administratrix of the Estate of Adanela L. Santana, Ebony White, and Ebony White, as Mother and Next Friend of J.B., filed a joint response. F&R Cargo filed a reply.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Pursuant to our usual practice, we will use initials to refer to the minor, J.B. *See In Re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015).

[2] F&R Cargo is represented by Caleb B. David, Esq., Michael D. Dunham, Esq., and Austin J. Longnecker, Esq. Aida Betts is represented by Taylor M. Norman, Esq., L. Lee Javins II, Esq., H. Lawrence Perry, Esq., and Christopher A. Young, Esq. Ebony White is represented by Dan R. Snuffer, Esq.

# I.     FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a multi-vehicle accident that occurred on April 4, 2021, near Wheeling, West Virginia, involving a Penske box truck driven by Franci Colon-Fermin ("Colon-Fermin"), a tractor trailer owned and operated by Continental Express, and a Volkswagen Jetta driven by Ms. Santana. The issue on appeal is whether the evidence supports the jury's determination that Mr. Colon-Fermin was an employee or agent of F&R Cargo.

Francisco Rincon-Santana ("Rincon") owns F&R Cargo, a small shipping company with three employees: himself, his daughter, and a third person. Since the company began operating in 2009, it has primarily shipped goods such as food, clothes, and school supplies from Allentown, Pennsylvania, to families in the Dominican Republic. Sometimes out-of-state clients send goods directly to F&R Cargo's warehouse. Other times, F&R Cargo will procure a driver to pick up the goods from the client and drive them to Allentown. F&R Cargo charges $150 per box on goods transported from Indiana to Allentown for shipment to the Dominican Republic.

Colon-Fermin was originally a customer of F&R Cargo. About five years ago, he started helping F&R Cargo load trucks and make pickups. Prior to the underlying accident, he transported items for customers of F&R Cargo from Indiana to Allentown, Pennsylvania, three or four times. On these trips, F&R Cargo chose the route, and either provided him with a company credit card for food and gas or reimbursed him for these expenses. F&R Cargo paid Colon-Fermin $700 for each of these trips out of the money it received from the customer whose goods were being shipped.

At some point after Colon-Fermin stopped working with F&R Cargo, Jose Hernandez, a customer in Indiana who wanted to transport some items to F&R Cargo for shipment to the Dominican Republic, contacted Rincon. Mr. Hernandez had rented a Penske truck so he could drive the cargo to Allentown, but could not make the trip himself, so he asked Rincon if he knew anyone who might be able to drive. Rincon suggested Colon-Fermin, although Colon-Fermin had not worked for F&R Cargo for some years and now had his own business hauling refuse. Mr. Hernandez agreed to use Colon-Fermin, so F&R Cargo bought a plane ticket for Colon-Fermin to fly to Indiana and was subsequently reimbursed by Mr. Hernandez for the flight.

F&R Cargo also obtained a copy of Colon-Fermin's driver's license to add him as a driver to the rental agreement with Penske. According to Colon-Fermin, he spoke with Rincon on the telephone about this job and was told to pick up the truck in Indiana and that he would be paid $700 when he returned to Allentown. In the words of Colon-Fermin, Rincon asked Colon-Fermin "[t]o do him the favor to come and pick up that truck." There is no indication in the record that Mr. Hernandez was involved in any way in determining the amount that Colon-Fermin would be paid, or when he would receive payment.

On the date of the accident, F&R Cargo did not provide Colon-Fermin with transportation to the airport. Mr. Hernandez picked him up in Indianapolis and took him to the home of Maria Santana to pick up the truck.[3] F&R Cargo and Colon-Fermin were not involved in selecting the truck, renting the truck, or loading the truck, which was already loaded when Colon-Fermin picked it up. F&R Cargo gave him no instructions for this trip concerning his route, stops, and speed, but he used the same route he had taken on prior trips between Indianapolis and Allentown. No evidence exists to suggest that he was required to check in with F&R Cargo during his trip.

The accident occurred near Wheeling, West Virginia, at the intersection of I-470 and 70. In order to avoid two vehicles on the left shoulder which were partially obstructing the travel lane, the driver of the Continental Express tractor trailer merged across a solid white line into the right lane of travel. Ms. Santana was driving in the right lane and slowed down in response to the tractor trailer merging in front of her. Colon-Fermin was driving behind Ms. Santana in the right lane and rear ended the vehicle she was driving. This collision pushed the Santana vehicle into the rear bumper of the tractor trailer, killing Ms. Santana and seriously injuring Ebony White and J.B.[4]

Aida Betts, acting as administratrix of the estate of Adanela Santana, Ebony White, and Ebony White acting as mother and next friend of J.B., filed three separate lawsuits naming multiple defendants. Prior to trial, they settled their claims with all named defendants except F&R Cargo and Colon-Fermin. Respondents brought claims against F&R Cargo for negligence, claiming that Colon-Fermin was an employee or agent of F&R Cargo and acting within the scope of his employment when the accident occurred; and contending that F&R Cargo was vicariously liable for the alleged negligence of Colon-Fermin. They also alleged that F&R Cargo was liable for negligently hiring, retaining, and training him.

The circuit court consolidated the three separate actions for trial. At the close of Respondents' case, F&R Cargo moved for judgment as a matter of law pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure on the issue of respondeat superior, i.e., whether a master-servant relationship existed between it and Colon-Fermin. After hearing arguments, the circuit court denied F&R Cargo's motion, finding that the evidence in the case was conflicting and/or susceptible to one or more reasonable inferences, such that the issue of respondeat superior was a question for the jury. Before submitting the case to the jury, the circuit court granted judgment as a matter of law in favor of Respondents,

---

[3] Mr. Hernandez did not have enough items to fill up the Penske truck, so he allowed other people to place some items on the truck for shipment to the Dominican Republic. Ms. Santana's house was used to store the items until there was a full load for the truck.

[4] In addition to their physical injuries, including traumatic brain injuries, both Ms. White and J.B. were diagnosed with PTSD (post-traumatic stress disorder) and depression.

finding that Colon-Fermin was negligent, leaving the jury to determine the relative percentage of his fault.

On March 14, 2024, the jury returned a verdict in favor of Respondents with respect to their claim of negligence against Colon-Fermin, and their claims of vicarious liability and negligent hiring, selection, and retention against F&R Cargo. The jury awarded economic damages in the amount of $4,029,256 and non-economic damages in the amount of $3,000,000, totaling $7,029,256 in compensatory damages.[5] The jury found Colon-Fermin to be 80% at fault and F&R Cargo to be 20% at fault, and also found Colon-Fermin to be an agent of F&R Cargo Express, LLC.

On March 29, 2024, F&R Cargo renewed its motion for judgment as a matter of law pursuant to Rule 50(b) of the West Virginia Rules of Civil Procedure and, alternatively, made a motion for a new trial pursuant to Rule 59(a) of the West Virginia Rules of Civil Procedure. F&R Cargo argued that there was no evidence presented during trial indicating that it had any power to control Colon-Fermin, and, therefore, the evidence was insufficient to support the jury's verdict. The trial court denied these motions, and F&R Cargo filed three separate notices of appeal, one for each of the three cases filed against it. On its own motion, this Court consolidated all three appeals for purposes of briefing, consideration, and decision.

## II.     STANDARD OF REVIEW

Orders granting or denying a post-trial motion for judgment as a matter of law are reviewed de novo. Syl. Pt. 1, *Fredeking v. Tyler*, 224 W. Va. 1, 680 S.E.2d 16 (2009); *Gregory v. Long*, No. 23-ICA-421, No. 23-ICA-422, 2024 WL 4041383, at *3 (W. Va. Ct. App. Sept. 4, 2024) (memorandum decision). "A motion for a directed verdict may properly be granted only when it appears from all the evidence presented that the party against whom the verdict is sought would not be entitled to a verdict under any view of the evidence." *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W. Va. 492, 499, 345 S.E.2d 791, 798 (1986). "[W]hen considering a ruling on a renewed motion for judgment as a matter of law after trial, the evidence must be viewed in the light most favorable to the nonmoving party." *Blackrock Enter., LLC v. BB Land, LLC*, 250 W. Va. 123, 133, 902 S.E.2d 455, 465 (2024) (internal quotation marks and citation omitted).

Regarding the standard of review for rulings on motions for new trial, the Supreme Court of Appeals of West Virginia has explained:

> The ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, [and] the trial court's ruling will be

_____

[5] A claim for punitive damages was withdrawn prior to jury deliberations.

reversed on appeal [only] when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

*Grimmett v. Smith*, 238 W. Va. 54, 59-60, 792 S.E.2d 65, 70-71 (2016) (quotation marks and citations omitted). Furthermore,

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

*Webb v. North Hills Group, Inc*., ___ W. Va. ___, ___ n.12, 914 S.E.2d 275, 282 n.12 (2025) (quoting Syl. Pt. 3, *Walker v. Monongahela Power Co*., 147 W. Va. 825, 131 S.E.2d 736 (1963)) (internal quotation marks omitted).

## III.    DISCUSSION

We begin our analysis by noting "the respective burdens of proof regarding respondeat superior liability and the independent contractor exception:"

It is always incumbent upon one who asserts vicarious [*respondeat superior*] liability to make a prima facie showing of the existence of the relation of master and servant or principal and agent or employer and employee. However, once a prima facie showing has been made, it is incumbent upon one who would defeat liability on the basis of an independent contractor relationship to show such fact.

*Zirkle v. Winkler*, 214 W. Va. 19, 22, 585 S.E.2d 19, 22 (2003) (per curiam) (quoting *Sanders v. Georgia–Pacific Corp.,* 159 W. Va. 621, 627, 225 S.E.2d 218, 222 (1976)). Furthermore,

One who would defend against tort liability by contending that the injuries were inflicted by an independent contractor has the burden of establishing that he neither controlled nor had the right to control the work, and if there is a conflict in the evidence and there is sufficient evidence to support a finding of the jury, the determination of whether an independent contractor relationship existed is a question for jury determination.

Syl. Pt. 6*, Cunningham v. Herbert J. Thomas Mem. Hosp. Ass'n*, 230 W. Va. 242, 737 S.E.2d 270 (2012) (per curiam) (quoting Syl. Pt. 1, *Sanders v. Georgia–Pacific Corp.,* 159 W. Va. 621, 225 S.E.2d 218 (1976)).

The analysis required by the Supreme Court of Appeals of West Virginia in determining whether someone has been acting as an employee or agent rather than an independent contractor considers four general factors: (1) selection and engagement of the servant; (2) payment of compensation; (3) power of dismissal; and (4) power of control. Syl. Pt. 7, *Cunningham v. Herbert J. Thomas Mem. Hosp. Ass'n*, 230 W. Va. 242, 737 S.E.2d 270 (2012) (per curiam) (quoting Syl. Pt. 5, *Paxton v. Crabtree*, 184 W. Va. 237, 400 S.E.2d 245 (1990)). Significantly, the fourth and "determinative" factor is the "power of control." *Id.*

Regarding the first factor, selection and engagement of the servant, Rincon suggested Colon-Fermin as a driver to Mr. Hernandez, who agreed to use him. According to Colon-Fermin, Rincon contacted him and told him to pick up the truck in Indiana as "a favor" to him. During this same conversation, Rincon told him that F&R Cargo would pay him $700 when he brought the truck to its warehouse. Mr. Colon-Fermin also testified that he was hauling a load of cargo for F&R Cargo at the time of the accident, and that Rincon "called me to go pick up the truck….and I went and picked up the truck." The jury could reasonably infer from this testimony that F&R Cargo selected and engaged Colon-Fermin and that he was acting on its behalf when the accident occurred.

Concerning the second factor, payment of compensation, Hernandez did not pay Colon-Fermin. Instead, F&R Cargo paid Colon-Fermin $400 out of the money it received from Mr. Hernandez.[6] On prior trips, F&R Cargo paid $700 per trip from Indiana to Allentown, but a lower amount was paid in this case because some of the cargo was damaged in the accident. There is no evidence that Mr. Hernandez played any role in deciding how much, whether, or when Colon-Fermin would be paid. Thus, F&R Cargo not only paid Colon-Fermin but determined the amount and time to pay him.

Regarding the third factor, power of dismissal, the circuit court found "that the evidence in this case demonstrated F&R Cargo had the authority to rescind Mr. Fermin's permission to drive on its behalf and transport its goods to its warehouse." Construing the evidence in the light most favorable to the respondents, we agree and find that the jury could reasonably have reached the same conclusion.

As for the fourth and most important factor, power of control, the parties cite various circumstances to support their respective positions. This factor does not require us to find that F&R Cargo actually exercised control, merely that the power to control existed. *Shaffer*

---

[6] This is similar to the situation in *Cunningham v. Herbert J. Thomas Mem. Hosp. Ass'n*, 230 W. Va. 242, 737 S.E.2d 270 (2012) (per curiam) where the hospital paid two companies which paid hospitalists who worked at the hospital. The *Cunningham* court concluded that the hospital did not pay the allegedly negligent physicians for purposes of determining whose employees they were.

*v. Acme Limestone Co., Inc.*, 206 W. Va. 333, 341, 524 S.E.2d 688, 696 (1999); Syl. Pt. 2, *Spencer v. Travelers Insurance Company,* 148 W. Va. 111, 133 S.E.2d 735 (1963).

F&R Cargo argues that Colon-Fermin was not an agent or employee, emphasizing that he was free to accept or reject this job, that he had a business of his own, and that he was free to choose his own route, speed, timetable, and any stops along the way. Furthermore, F&R Cargo did not require him to check in and did not give him any money or a company credit card to pay for gas and food. While recognizing these factors, we do not find them dispositive.

Although F&R Cargo did not tell Colon-Fermin which roads to use for this trip, when he drove from Indiana to Allentown before, they told him which route to follow, and that was the same route he used the day of the accident. The parties may not have discussed which route to use for the trip because everyone understood that he would be driving the same roads as before.

F&R Cargo controlled access to its warehouse and could have denied Colon-Fermin's access to that facility.[7] Moreover, F&R Cargo purchased Colon-Fermin's plane ticket and obtained a copy of his driver's license so that he could be added as a driver to the Penske rental truck. As the circuit court observed,

> But for F&R Cargo's directions to go to Indianapolis, payment of $400, instructions on where to transport the goods, facilitation and payment of Mr. Fermin's flight, the facilitation of the rental agreement, the introduction of Mr. Fermin to F&R Cargo's customer, and permission to drive on F&R Cargo's behalf, Mr. Fermin would not have flown to Indianapolis, been added as an additional driver, transported F&R Cargo's goods, or driven through Wheeling, West Virginia, where he [was involved in the accident of April 4, 2021].

This was sufficient control for the jury to find that Colon-Fermin was acting as the employee or agent of F&R Cargo, which was, therefore, vicariously liable for his negligence.

## IV.    CONCLUSION

As the circuit court recognized during trial, the status of Colon-Fermin was a close issue. Cases involving whether someone is an employee or agent, rather than an independent contractor, require fact-driven inquiries, and even slight factual differences

---

[7] In *Roof Serv. Of Bridgeport, Inc. v. Trent*, 244 W. Va. 482, 495-96, 854 S.E.2d 302, 315-16 (2020), the court found that the ability to deny access to the jobsite was an important factor in establishing the necessary control to support a finding of vicarious liability.

may result in different outcomes in otherwise similar cases.[8] Having carefully considered the particular facts and circumstances present in *this* case, we find no reversible error, and therefore affirm the judgment of the lower court.

Affirmed.

**ISSUED:  May 14, 2025**

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[8] This would have been a markedly different case if F&R Cargo had contracted with a third party to provide drivers like the authorities cited by the petitioner in support of its position. *See Shaffer v. Acme Limestone, Inc*., 206 W. Va. 333, 524 S.E.2d 688 (1999) (quarry which contracted with trucking firm which supplied its own drivers to haul stone from quarry to its customers was not vicariously liable for negligence of driver); *Gilley v. C.H. Robinson Worldwide*, *Inc*., No. 1:18-00536, 2021 WL 3824686 (S.D. W. Va. Aug. 26, 2021) (broker was not vicariously liable for negligence of carrier or its driver); *Jones v. C.H. Robinson Worldwide, Inc*., 558 F.Supp.2d 630 (W.D. Va. 2008) (same); *Schramm v. Foster*, 341 F.Supp.2d 536 (D. Md. 2004) (same). *Cf. Cunningham v. Herbert J. Thomas Mem. Hosp. Ass'n*, 230 W. Va. 242, 737 S.E.2d 270 (2012) (per curiam) (hospital contracted with other companies to provide hospitalists to work in hospital) (also cited by Petitioner).